First case this morning is 5-18-0306, Webb v. Effingham County. If you guys are ready, you may proceed. I am Doug Doris from Houghton-Dorris Stone in Lambert, Marion, Illinois. I represent the appellant, the plaintiff. I know that the bench is prepared and reviewed, but I'd like to give a brief recitation of the background circumstances because I think Molly would make better sense with that background. The case was a two-vehicle wreck in Effingham County. The county was conducting an oil and chip maintenance operation. The county road intersected a state highway. As the court knows, my plaintiff was a part of a sister group, two sisters, elderly sisters who were on the state highway. They were planning to go down the state highway, come to the county road, turn right, go visit their brother who lived down the county road. When the vehicle being driven by Lois Miller, the younger of the two sisters, came to the county road and started her turn, she was confronted by blackened oil, uncovered. She was confronted with a chat wagon, they call it, which is a large machine that dispenses a chat on the oil. It takes up both lanes coming toward her. She was confronted by a county worker walking across the mouth of the county road picking up orange cones that block both lanes. No signage was on the state highway leading up to this turn. The sister was confronted suddenly with this unexpected and confusing circumstance. She stopped her car in the middle of the right lane of the highway to come up with her strategy. When that happened, a pickup truck coming from the rear driven by a man named David Mars, who did not appreciate that she was up there, she did not complete her turn. She stopped suddenly. He was confronted with a car in his lane. He collided into the rear of her. It killed Lois Miller immediately. My client is Norma Webb. She was the sister who was the passenger in the front seat. She was badly hurt. She was removed by helicopter. She spent the next six months in hospitals, four different hospitals. Her medical bills were $1.2 million, uncontested. The insurance companies representing the host driver and representing the pickup truck from the rear both came to us and made offers of policy limits. They were minimal limits, but they made offers of policy limits. We, of course, accepted. We went to the court. We received good faith settlement orders from the court. That's important because, as the court is well aware, when you have good faith settlements, that blocks the remaining defendants from being able to go after the resettling defendants. When we tried this case in Effingham County, the only remaining defendant was the county. As the courts have learned in controlling law, as encapsulated in IPI 1204, it says, More than one person may be to blame for causing an injury. If you decide that the defendant is negligent and that its negligence was a proximate cause of injury to Norma, to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame. However, if you decide that the sole proximate cause of the injury to the plaintiff was the conduct of some person or persons other than the defendant, then your verdict must be for the defendant. Meaning this, the jury was confronted with the issue of whether the defendant county was negligent in the signage or in its worker walking across the mouth of the county road without looking and blocking its entrance, and leading to the stoppage of this vehicle on the state highway, which was a proximate cause of the collision which hurt these ladies. If the county was found to be partly at fault, as the sole remaining defendant after the others had settled in good faith, they were going to be responsible for the verdict. The jury, on the other hand, could exonerate the county by finding that either the host driver or the pickup driver were completely at fault, the sole proximate cause. So the difficulty in my lawsuit when the county was the only one left was that I was trying a case against Effingham County Highway Department in Effingham County in front of an Effingham County jury with Effingham County residents on the jury. The other difficulty was I was trying a case involving a rear end collision where the defendant pickup driver was not a pluggable character at all. He had had problems in his life. So the path of least resistance for a resident juror of Effingham County would have just said, maybe our boys didn't put up signs, maybe the county worker didn't look before he walked out and blocked traffic. But you know, the real bad actor here is the pickup driver. So to deal with that situation, my strategy was to employ a special interrogatory. That would force the jurors to have to confront the issue of whether they found that the defendant county did anything wrong, whether they did anything that proximately caused this car stop and that proximately led to this collision. As the court is well aware, the statute that controls special interrogatories is 735 ILCS 5-1108 which says, the jury may be required by the court and must be required on the request of any party, it's a mandatory language, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatory shall be tended, objected to, ruled upon, submitted to the jury as in the case of jury instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal as a ruling on a question of law. In other words, this is a de novo appeal. You're not determining whether Judge Eder properly exercised discretion, you're looking at it with a fresh eye. When the special finding of fact is inconsistent with the general verdict, the former, especially the right one, controls the latter, the verdict, and the court may enter a judgment accordingly. In other words, if the jury answers a question that would control the verdict and then there's an inconsistency between the verdict and special interrogatory, special interrogatory rules. Now, this was a fairly complex and somewhat novel case, so Judge Eder asked the parties to submit and exchange proposed jury instructions with each other during the trial and even prior to the trial, which we did. Special interrogatories were very important to my case, so I had actually a series. I went a little bit far at the beginning and actually asked that the jury be required to assign percentages of fault to each actor. Now, your honors, I believe that a jury could very well have concluded in this case and probably should have concluded that the pickup driver coming up from the rear was at fault. He wasn't paying proper attention, he wasn't controlling his vehicle, he was maybe too close. But on the other hand, he had the argument that I expected the vehicle up ahead to complete a right-hand turn, the turn signal was on, by the way, and when it didn't, suddenly, I expected that vehicle up ahead to clear. When it didn't clear, I said, stop, then I've got a problem. I expected the jury could have blamed Lois Miller, the sister who was killed, the host driver. They could have said, look, when you got up there, even though you couldn't turn into the machine, the oil, the worker, you shouldn't stop on highway. You just keep going. You're partly at fault for this. I could expect and would expect and did think the evidence justified the jury saying to the county, pull up a sign. There was one question I asked one of their experts. I said, is it ever a good idea not to put up a sign warning people that a road is closed up ahead? And he goes, no. Actually, no. I mean, you should warn people that you're going to encounter a danger up ahead. It's not expensive. You've got road crews to do that very thing. They should have put up a sign and their workers should not have walked across the mouth of the highway. He said, I didn't look. I just started walking. Suddenly, I hear there's a collision behind me. They skid past me. The county was a substantial actor in causing a dangerous condition in the chamber of this that led to this collision. There was also a county truck there with lights on, flashing. That is correct. It was partly blocking what the lady could see until she cleared the truck. Their experts say the flashing was enough. They had strobe lights on the county truck. Our expert says all that does is alert people that something's up there. That doesn't say you cannot turn right. There's no right turn up ahead. The driver couldn't tell what was behind until she cleared the truck and started to turn. Here's the man, here's the oil, here's the track wagon coming. There was corn in the right corner too. It was growing corn, five, six feet tall, something like that. You couldn't see what was growing that way. What was the date of the accident? July 26, 2012. That should have been full-grown corn. It was. It was, Your Honor. It was like six feet tall. The guy on the track wagon testified. All I could see was the tops of cars through there. He was sitting up on a seat. His head was above the corn. Which of your special interrogatories are you suggesting as the one that the judge erred on? All five? Your Honor, I think he should have given any of the five. I'm asking honestly, it would be a stretch for you gentlemen to say that should have been given because it asked for percentages. Their objection was, jury's going to take a while to come up with percentages. Like you would ask to be due in joint and several liabilities. We ask the jury to do that. We ask the jury to do that when you're comparatively at fault. It's not a novel concept. But I wanted percentages at the beginning because I wanted the jury to say, all right, the county's 10% at fault. The truck driver's 70% at fault. The horse driver's 20% at fault. To force them to confront the issue of was their county at fault. But that's a novel concept. If you endorse that, they'll start bronze and bust of you guys and put it out on the lawn. It's new law and stuff. But for me, that's a little bit, like I said, that was a stretch. And I realized it was a stretch and that's why I had different, more vanilla, especially rock horse ready for the judge. So we go into the jury instruction conference the night before final arguments, the night before we do the formal jury instruction. Now, the preliminary jury instruction was on the record. Objections, rulings made, even though it was the night before, it was formal as well. I started submitting my different interrogatories. The judge would tweak the language, disagree with them. The judge used very precise language. And finally, after interrogatory number four, he says, I will throw out for consideration and all the court, although the court would normally not offer, I'm reading from the record, his own interrogatory, special interrogatory. Obviously, he can't. The courts can't. The statute says the court can do that if they want. He says, in light of this dispute and this concern, and in order to avoid just an endless procession of special interrogatories, changing one word at a time, let me throw out this language and see what your responses are to it. Because I actually worked this up over the weekend in anticipation of this, having seen some of the special proposed interrogatories that I was going to submit. And his special interrogatory that the court submitted to us was, was the war vehicle collision of July 26, 2012, approximately caused at least in part by any negligence of defendant Effingham County? One simple sentence, pretty simple concept. Mr. Paulson, that gentleman right there, defense attorney, said, yeah, I think that's pretty good. And you were both same counsel at trial. We were. We were. Yeah, we got to know each other too well. Yeah, I think that's pretty good, he says. I said, I can embrace that. The court says so. If they answer yes to that question, and if the verdict came back in favor of the defendant, it was controlled, which is the test of a special interrogator. It's got to control the verdict, right? The judge says, and if they answer no to that question, if they said the county wasn't at fault, but they had sympathy for my lady because she was sweet lady and 1.2 million in damages and badly hurt and all that. They say, I will give her a verdict, but we find that the county wasn't at fault. Then my verdict, I'd lose my verdict, the special interrogatory would control. In other words, it was a good, solid, special interrogatory. And the court said, if you want to offer that, talk to me. It looks like the defense has no objection, so that the special interrogatory, and then the court would give it. That was really that night. I go home to the hotel. I prepare the special interrogatory. The next morning at 8 a.m., we meet. I submit it. Mr. Paulson, doing his job, I guess, says, I object. I think it's a compound question. Judge Eder says, you know, I've been thinking about it, and I agree it's compound. I'm not going to give it. I'm surprised. I disagree with his ruling, by the way. That's part of the recent appeal. But I say to him, well, I've got with me my computer drive, my thumb drive, got the instructions on it. Give me a few minutes, and I'll go print it up, and I'll break that special interrogatory down into two parts. Was Effingham County guilty of negligence, yes or no? If you find that they're guilty of negligence, interrogatory number two, then do you find that that negligence was a proximate cause of this collision? I'll give you two sheets instead of one. And he said, Judge Eder said, at this stage, I think we've taken five appeals at it. We still don't have a suitable one. Time has essentially run out here, and anything else would need to be in writing, and further submission to the court would simply be untimely. There would be no special interrogatories. Now, at that point, we had not started opening arguments. We were still in at the 8 a.m. session doing jury instructions. We had the whole day in front of us. We were going to argue at 9 and do final statements, and then they had to open. Ten to 15 minutes to allow me to break it up would not have been inconvenienced to the jury, or it would not have really thrown off the court schedule that much. The court was also aware that the trial was going to last several days. The trial lasted seven days. It was a seven-day trial, and like I said, it was the reason I set that up. In fact, it was a serious trial. I mean, this was serious injuries. So I think I was surprised by it. My appeal is this, and it goes like this. There are several cases in Illinois when I go and read the case law. This concept that you can't have a special interrogatory that combines fault and proximate cause in one sentence is compounded and impermissible. That's not the law at all. There's the cases Siding v. Greve, the Mudd v. Goldblatt, Benardi v. Chicago Steel, Santos v. Chicago Transit Authority, Moyers v. Chicago E.I. Knorr Railroad, Phillips v. Shell Road, which is 5th District, 73. Those are defendants where the defendants offer special interrogatories to test the concept of contributory negligence, proximate cause, point of injury. And everyone, the court said that is a proper special interrogatory. I don't think you can have a special interrogatory that didn't have the two parts. As I say in my brief, if I just submitted a special interrogatory and said, do you find that any of the defendants' highway workers were negligent, and they said yes, that is a control. Because it could have been that a highway worker four miles away from the collision site didn't have on a hard hat. He was negligent, but it had nothing to do with stopping the vehicle from causing a collision. The only way it controls is if that act of negligence caused the stoppage of that car, the sister's car on the highway, instead of the rear end collision. So I think the efficient way, and why I am asking the court to rule specifically to help practitioners out there, is to say this is a proper concept to have fault and proximate cause in the same sentence, and that's a proper special interrogatory. Suppose we agree with you. The appellee has brought up this McGovern case and said that it would be harmless error, even if that instruction should have been given. Address yourself to that McGovern case and tell us why that is not the case. McGovern, a special interrogatory was requested asking, was the plaintiff guilty of contributory negligence? The judge didn't give it. The appellate court said it should have been given, but it was harmless error because there was also the general jury instruction in there about percentage of comparative fault. The jury found the plaintiff 20% at fault. They answered the special interrogatory specifically. Yes, the plaintiff was at fault. Yes, the plaintiff was 20% at fault. So the McGovern court just simply says it's harmless error because it was answered when they assigned the fault, you know, the contributory negligence. Now, in my case, when the judge says I'm not going to give the special interrogatory, there was nothing to cure that. The jury did not have to look at it, confront the issue. Was the county negligent? And was this negligence proximate cause of this collision? And sign off, yes, no, 12 names. I want you to confront that. And that is the real purpose of the special interrogatory. Slow the jury down through the morass of all the other instructions saying, confront this one material fact issue that's going to control the verdict and the answer. Very helpful tool. And like I said, the courts can use it. Trial courts can use it. The other part of my appeal is if I am wrong, if this is an improper, impermissible compound question, if those two concepts of fault and proximate cause shouldn't be in the same sentence, then nevertheless the judge in the rare, and this is a rare instance where I think a trial court abuses discretion by not saying to me, Doris, you can have 10 minutes, 15 minutes, come in, break it up, put it in two parts. Because this is the special interrogatory that he had proposed, he had agreed to, and the judge says he was going to give and not report. Thank you. We have time for one more call. May it please the court, Mr. Doris. I disagree with some of the things you said, but just for factual purposes, no part of this accident happened on a county road. At no time was the county on the state highway. They were on the county road that intersects with the county highway. So where the accident happened was on the state highway, and there were oil and shipping on the county road, which was a county road. Right, a rural county road. The road was closed where traffic couldn't turn onto it for approximately 5 or 10 minutes. So the truck that had the flashing lights, the county truck, where was that parked?  It was on the shoulder between the state road and the county road. On the shoulder by the state highway, by the intersection of the state highway, but it was on the shoulder of the road. It was on the shoulder of the state highway. Right? Right by the state highway. Right. It was on the shoulder of the state highway. Correct. And it was not obstructed by corn, and we can disagree with that. But the fact is— It was not obstructed by corn. The strobe lights, which, you know, obviously— I think the plaintiff's lucky they even got to a jury, because I think the Tort Mutuality Act applied in this case anyway, and the summary judgment should have been granted, but that's neither here nor there. What I would like to address— That's not wrong here, though. No, no. But especially in the laudatory number one, what Mr. Dawes did, which is smart. I respect him. I think he's a very good lawyer. He started with interrogatory number one, which is trying to get away with everything. And he slowly, through the interrogatories, tried to get more reasonable and reasonable as to what he proposed. Interrogatory number one, first of all, it says free of negligence. That's nowhere to be found in jury instructions. I don't even know what that means, free of negligence. The central case law on this is you need to mirror the definition in the jury instruction if you're going to do a special interrogatory. Well, free of negligence doesn't appear anywhere in any IPI. Mr. Dawes, on all five of these special interrogatories, tries to basically rewrite the IPIs because he wants to over-exaggerate this proximate cause issue. Number two, special interrogatory two is compound and confusing. And it would cause the jury to deliberate over a special interrogatory that they may get hung up on. And that goes for all of these, really. Special interrogatory number three, conduct could be the proximate cause of the accident, but conduct not negligent. So therefore, in order to reach a general verdict in this case, six of the jurors could say, I think the county was negligent, but I don't think it was a proximate cause of this injury. I think it was this guy who had a seizure and never even put on his brakes and hit these ladies going 60 miles an hour, regardless of whether the county was negligent or not. Another six jurors could say, I don't think the county's conduct was negligent. But doesn't it require that the jury find that both of them answer them both positive, that they were negligent and that it was a proximate cause? See, a jury, six jurors, they could reach a verdict in favor of the defendant by six jurors saying, I don't think that conduct was a proximate cause of the injuries. And another six could say, well, I think they were negligent. So six of them could say, I think they were negligent, but it was a proximate cause. Another six could say, I don't think the conduct was negligent, but I think it probably was a proximate cause of the injury. So of all five of these, the jurors could actually get hung up on these interrogatories. In other words, have a hung jury on a special interrogatory where they could reach a verdict on a general verdict. Another problem with these special interrogatories, they all try to frame proximate cause in a way that is not in the jury instructions, even the fifth instruction given that says at least in part by. That's not the definition of proximate cause. It appears nowhere in the proximate cause instruction, at least in part by negligence. Two of these indicate free of negligence. Another one, every single one of his interrogatories misstates the law. One of them said, number three, interrogatory number three, it says it's the conduct of the county approximate cause of the injury. Everything in the county is conduct. Well, that's not the standard. My conduct could cause or be approximate cause of the injury, but if it's not negligent conduct, I'm not liable. So that entire interrogatory is improper simply because they could answer either way on that and they wouldn't do anything to solve or answer and test the verdict because that doesn't mean anything. The conduct has to be negligent, special interrogatory number four, free of any negligence. That doesn't appear anywhere in any jury instruction. The law is clear that when you have an opportunity to, you have to mirror the jury instructions. Not one of these interrogatories, including interrogatory number five, which I did originally think that was okay, but then I thought about it overnight, and it's still compound and it still says at least in part by. That's not in the jury instructions. Wasn't that the language that the trial judge suggested? It is. But what I'm saying is the trial judge was also wrong, and once I said that I still think it's problematic, he decided because, I mean, look at that in jury instruction. Wasn't your objection that it was a compound question? That was one of my objections. So what was the other? The at least in part by is confusing and doesn't appear in the jury instruction. It doesn't occur in IPI. The law is clear that these have to mirror the IPIs, and in every one he's used free of negligence or at least in part by or he's trying and attempting to re-instruct the jury on a more favorable proximate cause definition. And, you know, the jury did the right thing in this case. In my opinion, there was absolutely no negligence on behalf of the county anyway, and none of this accident even happened on county property or on a county road. And, you know, he had indicated the highway worker was walking across the road. He was probably 20 feet from the intersection because they don't oil a chip all the way up to the jurisdiction. As far as the highway or the roadway, was that oiled and shipped at the time or was it clear when he walked across? Oh, it wasn't oiled and shipped. So they could have turned in there if he hadn't been there. There's an argument that the person could have turned in. So where did the oil stop in reference to the county road? Well, under the law, the state has jurisdiction of that entire intersection. And so they own like 10 or 20 feet of the actual roadway as it intersects with the state highway. So they stopped shoring the state highway by 10 or 15 feet. Was that part oiled at the time? No, it was not. It was down the road some way, wasn't it? It wasn't way down the road. How far? I don't know, 30 feet? Okay. I mean, there was room for the person to pull off the road. That's all I'm saying. And I'm sure the jurors could have reached that conclusion. They're saying that the person, the county worker, was walking across the road at the time. They closed this road open for about five minutes. I don't know. I'm just trying to find out where the people are. He put a couple of orange cones across where they were going to come up to with oil and shit. So just to tell people or cars not to, you know, don't fall onto that. It hasn't been checked. And where was he at the time that the car was opposite? Was the car opposite him at the time at the intersection? He was standing near the intersection with the highway. Right. When this accident happened. Okay. In fact, I think this testimony almost got hit by them after the impact where the cars were flying. So he was on the county road essentially, not on the state. He was definitely not on the state road. No, it was not on the state road. He was on the county road perhaps on the road itself, not on the shoulder of the county road. Correct. He was on the road. And saw him standing on the county road. And the suggestion, the allegation is that they could not have turned because he was blocking that road without hitting him. Correct. Well, what I'm getting at, if he was on the county road, not on the state road, county road, right? Right. By what you're saying is he would have been walking in the oil, correct? No, he was just on. He was there to make sure nobody pulled onto the road. There was fresh oil, but it hadn't been shipped yet. So he was standing there. So he was on. Okay. Just a minute. He was on the county, the county oiled the county part of the road, correct? Correct. So he was walking on the state road because it wasn't oiled. He was on. He wasn't even on the shoulder of the state road. He was on. But they don't, what I'm trying to tell you is they don't oil all the way up to the. I know that. That's what, so you said they stopped before they got to the state road. About three feet short of the intersection. But that was state part, right? I don't know who technically owns it.  Now, who maintains it? The state. The state. He was walking on that part of the highway. Well, otherwise he'd be walking in the oil by your definition. Was he walking in the oil? No, he was not walking in the oil. So then he was on the state part of the road. He was certainly on the area that the state had jurisdiction over. Right. But it was not on the highway. It was on the part that turned off. Right. I just think, you know, this was a seven-day trial. I think Mr. Torres did a great job. He tried to push the envelope here. But none of these five interauditories, special interauditories, conform to the law, which is they have to mirror the IPI. That law is clear. And even if for some reason one of them should have been given, but the biggest problem with these is you would force a juror to maybe get hung up on the special interauditories when they could still rule for the defendant quite legitimately. Because the jurors don't have to all agree that the count was negligent, and they don't all have to agree that their conduct was approximate cause. They could come to the conclusion, like I said, six say, well, the count was negligent, but it wasn't approximate cause. The other six say it was approximate cause, but the conduct wasn't negligent. So how do you reach? So you could technically get hung up, you could hang a jury on special interauditories when they could actually reach a general verdict legitimately. So it doesn't test the verdict either. Now, this isn't did they run the red light. It was, you know, some simple factual question that could test the jury. I mean, this whole approximate cause issue is complicated, and I just don't see how any of these special interauditories were proper, and I think they were unduly biasing the defendant by misstating what the law is. Freedom of negligence, that's nowhere to be found. And one of them, it just says was the conduct approximate cause. Well, that doesn't test the verdict. Because if the conduct's not negligent, it doesn't matter whether the conduct was approximate cause. So in closing. Well, let me ask you a question. Do you, correct me if I'm wrong, you don't address his argument that the court erred by not allowing him some 10 to 15 minutes minimal time to modify that instruction. You have to admit it's a little problematic that the judge in a conference with the two of you where we both agreed that his suggested special interrogatory was okay and was going to be, he was going to give it to the jury. Comes back the next morning and with your objection being made, reverses himself and then doesn't allow some cursory time to, you know, to address the issue that you raised in your. How many times does he get? I mean, we were adjourned special conference the last week. How many times, how often does one have the opportunity to object? You didn't object when the judge said that he was going to give it. And then after the objection was made subsequent to that, shouldn't there be a little time to. I didn't object that night because it hadn't been introduced yet. I had the right to think about it, do a little research and come back and object when it was formally introduced as a special interrogatory. And that's what I did. And that's fair. My question is, did you address this in your argument, in your brief, with regard to his argument that he should have been, that it was error for him not to be given. No, I didn't. Actually, I did not address that. But again, how many times, I mean, could we go for days and just keep. I think what he did was clever. He tried to push an envelope on the first special interrogatory, and then he slowly whittled it down. At what point does a judge say, hey, you've had enough chances. I'm done with this. We've got a jury waiting out there, and I'm not going to make them wait any longer. You've had five chances to submit a special interrogatory, and I find that none of them are suitable based on the law. Well, I would agree with you that I think it was clever how they were less and less further from the IPIs. Correct. As he went. But on that, he submitted four. On the fifth one, though, that was not his submission, per se. According to his argument, he just put down what the judge had said. The judge had made that suggestion. But once I had the opportunity, like I said, to look at it, to think about it overnight, I came down and said, judge, I don't even think this one will work. And I'll tell you, one of the reasons it won't work is it could be, again, the jury could get hung up on that interrogatory, and at least in Cork, I is nowhere in the IPI. Nowhere. So he could have just mirrored the IPI, and I would not be standing here because I wouldn't have an argument. But none of these five special interrogatories mirrored the IPI. And that is the law. Thank you. Thank you. Mr. Doris. The in part, there was no objection to the in part language. That was not for the court at that point. That's not why the court reversed or refused to give it. He decided it was compound. That's what he ruled. And the in part, at least in part language, does not contradict the language of proximate cause instruction. It just is other language that helps it. I agree that those three words could come out. It wouldn't change it, at least in part. It's absolutely consistent with the proximate cause language. It's just a part, not the last part, not the only part. It's just a part. The 50-50 argument that you questioned Mr. Paulson on, you're exactly right. It's a two-prong analysis that the jury has to make when they are told they have to decide, was the vehicle collision on 7-26-2012 proximately caused, at least in part, by any negligence of defendant Effingham County? Some of them could say, I don't find there's any negligence. They would answer that, no. Some could say, there was negligence, but we don't think it caused the collision. They would then answer that interrogatory, no. The hypothetical he uses is they might differ on their reasoning, but the interrogatory absolutely instructs him, you've got to determine both, line up, or else it's a no. All 12 would answer no. They'd answer no for half the one reason, half the other reason. What that does is his argument logically doesn't hold water. Justice Welch, there were pictures introduced at trial, Plaintiff's Exhibit No. 1, I believe I don't have those in front of me. Plaintiff's Exhibit No. 3, Plaintiff's Exhibit No. 4, Plaintiff's Exhibit No. 5. There were several photographs showing how close the oil chip came up to the State Highway, and it came right up to it. I mean, it came up pretty close to that, actually. At the time... When did it come up to the stop sign on the county road? Yes, yeah. But what you can actually see in the pictures, you can see where the check, the freshly laid... The pictures were taken right after the accident. The evidence was that right after the accident, the oil chip guy went ahead and covered up that oil, that fresh oil. He went ahead and went right up to the edge of the State Road, and then drove along and parked. But he went ahead and finished the job while the collision had just happened. We asked at trial, Justice Welch, for this, for the state worker to, Robert Westendorf, to actually draw all those pictures. Where were the cones? And he actually drew where the two cones were. He put circles. They weren't still there in the picture at the time the photographs were taken by the police right afterwards. But it is right there on the edge of the State Highway and County Highway. He had to be on the State Highway or very close to it. The truck was parked on the shoulder of the State Highway. He got out of the truck, he said, and was walking right behind the truck, picked up the cones right behind the truck. And no, the cones were not placed out in the oil. They wouldn't place them out in fresh oil. So the back of the sister's car at the time of the wreck was clearly still on the State Highway. This was not an issue on appeal, but it was certainly an issue that was raised and briefed extensively at the trial level on motions to dismiss. The case law is pretty clear, just so we don't get hung up on that, that the state, the law does not draw like a fine line, like an NFL review, whether your foot was on the chalk line or not. If the actions of the county cause an accident off their property, they're still responsible. The issue is whether the county caused actions near where this happened. Okay. Mr. Paulson's wrong. That road was not closed for five to ten minutes. That road was closed almost four hours. And that's from the highway workers. They actually put a sign up that was back at the corner, back on the county road. You had to turn off the State Highway, actually get one corner, and they had a sign up there that said, no closed oil. Does it matter how long the road was closed? From their argument, if it was closed for five minutes, did they have time to put up the signs? I actually don't think it does. But they actually said, you know, this is like a moving operation where you're picking up carcasses off the highway. It's not. It was a closed lanes block, road closed sign. Four hours. All right. Thank you. You're welcome. Thank you. We'll take the matter into consideration and issue a ruling in due course.